# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

———————————————————
                                                  )
**CITIZENS FOR RESPONSIBILITY**                   )
**AND ETHICS IN WASHINGTON,**                     )
                                                  )
   **Plaintiff,**                  )
                                                  )
   **v.**                           )  **Civil Action No. 08-1535 (RCL)**
                                                  )
**U.S. DEPARTMENT OF**                            )
**HOMELAND SECURITY, et al.,**                    )
                                                  )
   **Defendants.**                 )
———————————————————)


## <u>MEMORANDUM OPINION</u>

 This matter comes before the Court on defendant's Motion [9] for Summary Judgment and plaintiff's subsequent Cross-Motion [10] for Summary Judgment.  For the reasons contained herein, the Court will grant summary judgment for plaintiff.

 These motions raise legal issues identical to some addressed by this Court in parallel litigation, *Citizens for Responsibility and Ethics in Washington v. U.S. Department of Homeland Security, et al.*, No. 06-1912, in which the same plaintiff sought the same type of records from the same defendant.  For those issues, this opinion will not repeat at length the legal analysis from opinions in that litigation.  It will instead summarize the analyses when applicable and refer to 06-1912 opinions for a more detailed explanation.

# I.  FACTUAL BACKGROUND

In July 2008, plaintiff filed a FOIA request with defendant seeking agency records related to visits by Stephen Payne to the White House or the Vice President's residence ("VPR").[1]  The Secret Service, a component of defendant, creates various types of records associated with visitors to either the White House complex or the VPR.  The main records of visitors to the White House are Access Control Records System ("ACR") records and Worker and Visitor Entrance System ("WAVES") records.  Other security-related records are also maintained.  VPR visit records include post entry logs (handwritten entry records), permanent and daily access lists (clearance lists for regular visitors and specific visitors, respectively), event lists (clearance lists for particular events), and e-mails requesting access to VPR.[2]  Other records reflecting White House visitors include parking records, daily briefing sheets, schedules, name check reports, e-mail access requests, and "Visitor Multiple Entry Reports."[3]  When defendant did not produce

---

[1]Plaintiff indicated that its interest in Stephen Payne was related to reports of his "attempt[s] to sell access to top White House officials in exchange for contributions to the Bush presidential library."  (Def.'s Opp'n at 1.)

[2]These types of White House and VPR visit records are discussed in detail in *Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Homeland Security, et al.*, 527 F. Supp. 2d 76, 79–87 (D.D.C. Dec. 17, 2007).  That lengthy discussion is not repeated here.  As noted later herein, though, this Court does follow that opinion's position that these records are "agency records" subject to FOIA.

[3]According to defendant, these record categories were not implicated in the parallel litigation.  *See supra* note 2.  Defendant's brief explained these categories:

> Parking records are created by the White House; the Secret Service does not modify or add anything to them.  Second Caldwell Decl.  ¶¶3–4.  Daily briefing sheets, while created by the Secret Service, contain scheduling information that is supplied by the White House.  *Id.* ¶¶5–6.  Similarly, the Secret Service has received some protectee schedules from the White House, *id.* ¶7, and name check reports contain appointment information from the White House or other authorized White House passholders, *id.* ¶¶8–9.  The Secret Service receives e-

responsive records within the period allowed by statute, plaintiff initiated this action.

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of production as to the absence of genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A genuine issue of material fact exists if the evidence, viewed in the light most favorable to the nonmoving party, "is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  But a genuine issue requires more than "a scintilla of evidence" supporting the nonmoving party; "there must be evidence on which the jury could reasonably find" for the nonmoving party.  *Id.* at 252.

The operative question for summary judgment motions in FOIA cases is whether the agency has executed a search "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  Summary judgment can be awarded based on information provided by the agency in affidavits or declarations. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Agency affidavits or declarations establishing the adequacy of a search must be "relatively detailed and non-

---

mail access requests from, among others, OVP staff.  Third Morrissey Decl. ¶34.
Finally, the Visitor Multiple Entry Reports are an embodiment of WAVES data.
*See* Fourth Morrissey Decl. ¶3.
(Def.'s Mot. at 13 n.14.)

conclusory." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  Such affidavits or

declarations "are accorded a presumption of good faith."  *Id*.  "An agency must demonstrate that

'each document that falls within the class requested either has been produced, is unidentifiable,

or is wholly exempt from the Act's inspection requirements.'" *Long v. Dep't of Justice*, 450 F.

Supp. 2d 42, 54 (citing *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and

quotation omitted)).  If the agency claims that records are exempt from disclosure, it bears the

burden of showing that the claimed exemption applies.  *See* 5 U.S.C. § 552(a)(4)(B);  *U.S. Dep't

of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989).

### III.  ANALYSIS

Defendant makes three main arguments in favor of its motion.  First, defendant contends

that the records sought by plaintiff are not "agency records" subject to FOIA.  Second, defendant

argues that FOIA must be construed as excluding these records so as to avoid "serious questions"

about its constitutionality.  Finally, defendant claims that the sought records reflect presidential

communications and thus are exempt from disclosure under FOIA Exemption 5.  This Court's

opinions in the parallel case, No. 06-1912, reject all three of these arguments.  This opinion

rejects them as well, for the same reasons.

### A.      The Records Sought by Plaintiff Are Agency Records

The Court's December 17, 2007 opinion in the parallel litigation No. 06-1912 established

that many of the records sought by plaintiff here—WAVES records, ACR records, and the

various types of VPR records—are "agency records" subject to FOIA.  *Citizens for*

4

*Responsibility and Ethics in Wash. v. U.S. Dep't of Homeland Security*, 527 F. Supp. 2d 76, 88–98 (D.D.C. Dec. 17, 2007).  Defendant recognizes this prior adverse ruling, but briefs the issue in detail anyway "to preserve its record for future appeal."  (Def.'s Mot. at 13.)  Defendant offers no new theories as to why these records should not be considered "agency records" under FOIA.  Because the defendant bears the burden of demonstrating that the sought records are not subject to FOIA, *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989), the Court maintains its position that those records are subject to FOIA.

Defendant points out in a footnote that the request here may implicate "a small category of records" that were not at issue in 06-1912 (parking records, daily briefing sheets, schedules, name check reports, e-mail access requests, and "Visitor Multiple Entry Reports").  (*Id.* at 13 n.14.)  Mention of these records was limited to this footnote only.  The footnote contained one or two brief justifications for why defendant believed each type of record was not an "agency record."  This passing mention does not give the Court enough basis to hold that these new types of records are also "agency records."  At the same time, though, it falls short of establishing that the records are *not* agency records.  The agency bears the burden of showing that those types of records would not be covered by an adequate search of agency records.  Accordingly, this small category of records will be considered agency records for the purposes of this litigation.

**B.      "Constitutional Avoidance" Does Not Preclude Applying FOIA to the Records at Issue**

Defendant briefs the "constitutional avoidance" issue in much the same way as the "agency records" issue.  This Court disposed of the question in 06-1912, *CREW v. DHS*, 527 F.

Supp. 2d at 98–100, and defendant, recognizing the adverse decision (Def.'s Mot. at 24 n.21), argued the issue again.  Here, defendant emphasized how applying FOIA to these records would unconstitutionally intrude on the President's ability to maintain confidentiality and frankness in soliciting and receiving advice.  However, defendant did not refute the primary basis for the Court's earlier opinion: in the absence of statutory ambiguity the constitutional avoidance doctrine has no place, and FOIA unambiguously encompasses the records at issue here.  *See CREW v. DHS*, 527 F. Supp. 2d at 98–100.  As a result, the Court maintains that the doctrine of constitutional avoidance is inapplicable here.

C.      **The Records Are Not Within the Presidential Communications Privilege and Thus Are Not Exempted From Disclosure by FOIA Exemption 5**

The final argument made by defendant was also made in 06-1912, and resolved in an opinion issued today.  *See* Mem. Op., No. 06-1912 [75] (D.D.C. Jan. 9, 2009).  Defendant argued there, as it does here, that releasing the sought records would reflect from whom the President was soliciting advice and perhaps even allow one to surmise the content of that advice.  As a result, they would be protected in the civil discovery context under the "presidential communications" privilege, and thus exempted from disclosure under FOIA by FOIA Exemption 5.  *See* 5 U.S.C. 552 § 552(b)(5) (exempting "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.").  Relying on the exemption, defendant neither confirms nor denies the existence of responsive records.  Such a "Glomar response" is appropriate "where to answer the FOIA inquiry [as to the existence or nonexistence of responsive records] would cause harm cognizable under

an FOIA exception." *Gardels v. CIA*, 689 F.2d 1100, 1003 (D.C. Cir. 1982); s*ee also Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976) (approving such a response by the CIA regarding the secret "Glomar Explorer" vessel).

The 06-1912 opinion goes into some detail in its rejection of this proposition, but the bottom line is that the presidential communications privilege protects only *communications*; the bits of information contained in the sought records—names of visitors, dates of visits, and in some case who was visited—do not rise to the level of protection under the presidential communications privilege.[4]  *See* Mem. Op., No. 06-1912 [75] at 6–8 (D.D.C. Jan. 9, 2009).  Such negligible intrusion into the presidential consultation process does not justify curtailing the public disclosure aims of FOIA.  *See id.* at 8–9.  Because Exemption 5 does not apply here, defendant's Glomar response is similarly inappropriate.


## CONCLUSION

For the reasons stated above, the Court shall grant summary judgment for plaintiff.  A separate order shall issue this date.


Signed by Royce C. Lamberth, Chief Judge, on January 9, 2009.

---

[4]Because the presidential communications privilege does not apply, the Court need not address plaintiff's argument that it was improperly invoked.